STATE v. JOSEPH BOBLETER and Others.[1]

June 14, 1901.

Nos. 12,610—(12).

| | |
|---|---|
| 83 | 479 |
| e86 | 192 |

**Bond of State Treasurer.**

Under the proviso found in G. S. 1894, § 344, subd. 2, the state treasurer and his sureties upon his official bond are liable to the state on account of and for all moneys deposited by said treasurer in banks or with bankers selected by him in accordance with the provisions of the same subdivision.

**Liability of Sureties—New Term of Office.**

The rule laid down in Board of Education v. Robinson, 81 Minn. 305, as to the liability of sureties upon an official bond given by and in behalf of a public officer who has succeeded himself in office, applied in the case of an action upon a bond given by a state treasurer upon entering upon his third term.

Action in the district court for Ramsey county against defendants, Joseph Bobleter, as principal, and five others, as sureties, upon the official bond of Bobleter as treasurer of the state of Minnesota. The amount sought to be recovered—$137,426, and interest, less payments of $40,473—was the amount on deposit in insolvent banks in the name of the state upon the expiration of defendant Bobleter's term of office, and which for that reason he was unable to turn over to his successor. From an order, Kelly, J., sustaining a general demurrer to their separate answers to the complaint, defendants appealed. Affirmed.

*Geo. C. Lambert, Davis, Kellogg & Severance, Stringer & Seymour,*

[1] Reported in 86 N. W. 461.

*Stevens, O'Brien, Cole & Albrecht* and *Briggs & Morrison,* for appellants.

*W. B. Douglas,* Attorney General, for the State.

COLLINS, J.

At the general election held in this state in November, 1888, defendant Joseph Bobleter was elected state treasurer. He duly qualified, entered upon, and discharged the duties of his office for a term of two years. He was re-elected in November, 1890, and again in 1892, beginning his last two-year term on the first Monday in January, 1893. Before entering upon the duties of his office at the last-mentioned date, he, as principal, and each of the other defendants, as a surety, duly made, executed, and delivered to the state a bond in the sum of $400,000, conditioned for the faithful discharge of his duties as such state treasurer, and, among other things, for the delivery to his successor, at the expiration of his term, of all moneys which by law he was required to deliver. At the end of this two-year term he failed to turn over and deliver to his successor a sum of money which he had theretofore deposited in certain banks in the name of the state. These banks had become insolvent, and solely because of this insolvency, and not through any unfaithfulness on the part of the treasurer, he was unable to turn over the money. Demand having been made and payment refused, this action was brought to recover the amount so deposited in these banks. The answer stated these facts quite fully, and the court below overruled a general demurrer thereto. Thereupon the defendants appealed.

We approach the consideration of this case understanding the importance of the question presented, and fully realizing that if we sustain the conclusion of the court below hardship results to the defendant principal, and to the sureties upon his official bond; for, technically speaking, the loss was not his nor theirs. We appreciate that if we sustain the court below we hold, in effect, that the treasurer was, at the time in question, the guarantor of the continued solvency of a large number of banks scattered throughout the state, in which, in strict accordance with the statute, public funds were deposited from day to day during his term of

office. But, notwithstanding all that, we have to determine the question of liability under the statute without permitting our own views as to what that statute ought to have been to bias our judgment as to what it is, and independent of any hardship which may be imposed upon the individuals most deeply concerned by an adverse decision.

To arrive at a proper conclusion, it may be well to first examine the history of legislation on this particular subject from the time we became a state in 1858. At that time, and until the enactment of an amendatory act (Laws 1873, c. 34), it may safely be assumed that the state treasurer was responsible, absolutely, for the safe-keeping of all public moneys that might come into his hands. He was then charged, under the terms of Laws 1858, c. 59, § 2, as he now is by G. S. 1894, § 339, with safely keeping all public moneys which were paid into the state treasury, and, under the decisions, this liability was unquestionable, except, probably, in cases of loss by the act of God or the public enemy. The ground upon which this doctrine of absolute responsibility is placed was satisfactorily stated in U. S. v. Prescott, 3 How. 578; and the rule as then announced was of general application for many years throughout the United States. It was not questioned anywhere, and, as a proposition of law, is not now, in cases where the duty to safely keep public funds is imposed upon a public officer without any qualification whatever, express or implied. Later, in the case of U. S. v. Thomas, 15 Wall. 337, it was held that a collector of public money was discharged from liability on account of a seizure of the same by an army of the Confederate states, in time of war; such seizure being without negligence or fault of such collector. The position taken by the court in this case was that the collector was absolved from liability because prevented from paying over the money by the act of a public enemy. Obviously, it was not intended to overrule, but to distinguish, the Prescott case, before mentioned. This was assumed and asserted in Board of Education v. Jewell, 44 Minn. 429, 46 N. W. 914.

In 1873 the state treasurer was, by means of the amendatory act before mentioned, relieved from further responsibility upon depositing money in certain national banks designated by a board of

auditors composed of the governor, secretary of state, and the attorney general; these banks being required by law to deposit with the treasurer national or state bonds as security for the money to be deposited with them. The policy of this statute was to provide state depositories to be selected and designated by a board of auditors, and with this selection and designation the treasurer had nothing to do. His duty was performed when he deposited the public funds in accordance with the mandates of the board. The result was, undoubtedly, that, during the time this law was in force,—about a year,—the state treasurer was relieved from liability in case the moneys so deposited were lost without negligence or bad faith on his part.

But the law and the policy thereby adopted were soon changed by an amendment (Laws 1874, c. 11), and it was then provided (section 28, subd. 2) that all of the funds of the state should be deposited in the name of the state, in one or more banks located at the capital of the state, immediately upon their receipt by the treasurer, these banks to be selected by him, and to execute a personal bond to his satisfaction, and to the satisfaction of the board of auditors, consisting of the same officials as before.

This statute continued in force until the amendments in 1883 and 1885, changing the law to that now found as G. S. 1894, § 344, subd. 2, which reads as follows:

"All the funds of the state shall be deposited in one or more banks located in the state immediately on their receipt, by the treasurer in the name of the state of Minnesota; such bank or banker shall be *selected* by the treasurer, and shall be required, prior to the receipt of any such deposits, to give to such treasurer, for the use of the state of Minnesota, a personal bond, to the *satisfaction of such treasurer* and said board of auditors, in at least double the amount to be so deposited, and with at least five sureties, who shall all justify in the manner provided for the justification of sureties on bonds in civil actions, as *security* for the amount to be deposited with such bank or banker: provided, however, that the *taking of such security shall not be construed in any manner to release the said treasurer or his bondsmen from their liability to the state for any money so deposited.*"

The italicizing is our own and the purpose is to call special attention to some particular features of this enactment.

It is first to be noted that a radical change was made in the existing law. By the statute of 1873 the state treasurer had nothing to do with the designation of the depositories. National banks only were to be selected by the board of auditors, and the state treasurer was absolutely powerless in respect to such selection. The whole matter was taken out of his hands, and, as before stated, it is quite evident that he and the sureties upon his official bond were thus relieved of all liability as to public funds deposited in one of these designated banks, without any express provision of the law to that effect. One year's experience with this statute seems to have been sufficient, and then came the amendment of 1874, which provided for the deposit of all public funds in one or more banks, located at the capital of the state, such banks to be selected by the treasurer himself, and to this statute was attached the proviso as to the effect of taking security from the bank or banker selected. The only important change since that of 1874 is that the restriction as to the location of the banks or bankers which could be designated has been removed, so that the deposits may now be made in any bank, or with any banker, located in the state and selected by the treasurer.

We concede that while the statute of 1873 was in force the obiter remark in Perley v. County, 32 Mich. 132, to the effect that if an officer is required or authorized by law to make deposits in any particular place, or with any particular person, he is usually, if not universally, protected from any further responsibility, so long as he deposits and leaves the money there, and that he is not a guarantor of the safety of the deposits, would be the rule to apply, but it does not follow that it is controlling under the statute now under consideration. It might, and probably would, govern if counsel for defendants were justified in asserting, as they do repeatedly, that under the present law the treasurer does not select the depositories, but, on the contrary, that the selection is ultimately made by the treasurer and the three officials comprising the board of auditors,—a body consisting of four persons in all, a majority thereof finally controlling and designating the depositories. This contention is without foundation. The treasurer alone selects the banks in which the deposits may be made. Each

and every bank or banker is to be selected by him under the law, and the board of auditors simply exercises supervision over the bonds to be executed and delivered by the banks or bankers thus chosen. These bonds must be satisfactory to such treasurer,— that is, approved by him,—and they must also be satisfactory to and approved by the board of auditors. The treasurer and board act independently in the matter, and not conjointly. It is true that a bond may be satisfactory to the former, and not to the latter; but the presumption is that the board will be satisfied with and approve any bond which is in the proper form, and has sureties sufficient in number and of ample financial standing. It is not to be presumed that the board will act capriciously, or with a design to drive the treasurer into selecting depositories picked out by its own members. Official bonds have to be approved, usually by some official who has no voice in the selection of the appointee to office in whose behalf the bond is given.

That the official has this supervisory power or authority as to the bond is no argument in support of a contention that he thereby makes the selection. Or, to take an illustration more in point: Under the provisions of G. S. 1894, §§ 729, 730, depositories for county funds are designated by the county boards of auditors, while the bonds thereof must be approved by the boards of county commissioners. But this fact does not indicate in the slightest degree that the board of auditors does not select and designate such depositories. We must assume that this board will properly perform its duty, and will not refuse to be satisfied with and to approve all properly executed bonds. But, in the event of such refusal, the obligation resting on the treasurer is plain. Having selected a depository, which has given a bond satisfactory to him, his duty, as to carrying out the provisions of the statute as to depositories, is at an end. He has complied with the law as applicable to or binding on him, and is not required to go further. In such a case he has nothing to do but to retain the custody of the public funds, and to safely keep the same, and this he agreed to do when he accepted the office. It will thus be seen that the board cannot, by refusing to approve bonds, take the management and custody of the public funds out of the hands of the state treas-

urer, and cannot compel him to select depositories of its own choice. So that all argument based upon the proposition that the board may select these state depositories, either directly or indirectly, and all cases cited by counsel upon this proposition, are without force, because the argument and authorities are predicated upon a false premise. And even in the Perley case, which involved the liability of a city treasurer, it was said,

"But in the only case where officers are allowed to choose their banks of deposit, they are required to do so at their own risk."

Attention has been called to In re State Treasurer's Settlement, 51 Neb. 116, 70 N. W. 532; but there was an express provision in the Nebraska statute regulating deposits, to the effect that no treasurer should be liable on his bond for money deposited under the direction of proper legal authority, and where such bank had given the bond required by statute. We had no such provision in our statute during defendant Bobleter's term of office. One of the cases cited (City v. Woods, 20 Mont. 91, 49 Pac. 437) would support the contention of defendant's counsel, if it were not for the proviso in section 344, to which reference has already been made. It was there held that, where the law of a state required a city treasurer to keep his funds on deposit in a bank, he is freed from liability if a loss comes by the failure of such bank of deposit, provided he has used reasonable prudence when making his selection, and is without fault or negligence in keeping his funds there. This opinion seems to have been based upon the case of U. S. v. Thomas, supra, and upon a view expressed by Mr. Mechem in his book on Public Officers (section 301). Evidently the Montana court, when expressing its opinion, failed to notice that the act which it was held relieved the collector in the Thomas case was that of a public enemy, and, for that reason alone, a departure was made by the federal court from the strict rule of liability which had previously been adopted and promulgated in U. S. v. Prescott.

It can be safely said that the strict rule of liability has never been modified or relaxed by any of the leading courts in this country, except in cases where loss has come to a financial officer through the act of God or the public enemy, or where control over

public funds has been wholly taken out of his hands by statute; such, for instance, as a law requiring him to deposit the funds in a bank selected and designated independently of him. But, in any event, no cases have been cited in which language of the purport of that found in the proviso of section 344 has been construed, and therefore none of those to which attention has been called are in point here.

Right here we refer to an erroneous statement in the brief of counsel that under a statute of Michigan, with a provision substantially like that in our own, it was held in the Perley case that a state treasurer was not liable in case of the failure or insolvency of a designated depository. The provision (1 Howell, Ann. St. § 398) is in substance the same as our own, but the defendant in that case was a city treasurer and it was the funds of a city which had been lost. The liability of a state treasurer was not in issue and the above-mentioned statute was not considered; was not even referred to. But with this proviso incorporated into the statute of Minnesota in 1874, ex industria, the case resolves itself in its last analysis to a construction of the language there found and, of course, we are required to give it some force and effect. We are compelled to say that its meaning is perfectly plain, in our judgment. The language is, that taking security for the money deposited with bankers or with banks selected by the state treasurer is not to be construed as releasing in any manner the treasurer or his bondsmen from their liability to the state for any money so deposited. This is the express declaration, and while it is possible that the legislature might have declared itself with more certainty, there seems to be no doubt as to what was intended. It might have enacted unequivocally that the liability and responsibility should continue and remain if a loss occurred. A positive statement of this nature asserting and affirming that the treasurer would still remain liable upon his official bond, notwithstanding he had deposited all public funds, might have been the better form, but here is a plain provision, in effect that the treasurer and his bondsmen are not to be released from liability because security has been taken from designated depositories. This was the law when defendant Bobleter accepted the office and

at the time the other defendants became sureties upon his official bond. He accepted with this statute in force, his sureties went upon his bond with this provision before them and if this construction of it leads to loss to them, it arises out of an obligation entered into with full knowledge of, or abundant opportunity to learn, the law. Want of knowledge as to the extent of their obligation is no excuse for either of the defendants.

Counsel are obliged to attempt to account for the presence of this proviso in the statute and to place some construction upon it. They concede that it cannot be ignored. Their position is that its purpose and object were simply to continue a liability which then existed, and which had existed under the Law of 1873, an admitted liability in case of unfaithfulness, want of care in making deposits, or negligence in respect to depositories. Their inquiry in the brief is:

"Is it not plain that this means that the mere taking of the security from the banks will not, in itself, permit the treasurer to shut his eyes to the financial condition of the depositories?"

The answer to this interrogatory is, that with or without this proviso the treasurer could not "shut his eyes" to the situation and escape liability on his bond, and with or without it he could not be unfaithful, careless, or negligent in the discharge of his official duties and avoid answering to the state upon the condition for the faithful performance of his duties contained in his bond. Counsel really concede that under the law of 1873 unfaithfulness, want of care, or negligence would render the treasurer liable irrespective of the condition of the law as to depositories. He would be liable because he had not faithfully discharged the duties of his office. And, under the constitution, it is obvious that no legislative act could absolve a treasurer from this obligation to be faithful. Now this precise liability has continued down to the present time. No matter what changes have been made in the statute as to the treasurer's liability in case of deposits in banks, he must still be faithful. If he is not, but is careless and negligent and loss ensues, his sureties must answer for it. He is bound to exercise care and to act in good faith in all of his official

transactions. This being the fact the proviso is actually of no force or effect, if we should agree to the position taken by counsel. Their claim deprives it of all vitality. It really eliminates and expunges every word thereof from the statute, because it strips it of any force or signification whatsoever. We cannot accept any construction of this language which renders it meaningless and without purpose.

Attention has been called by counsel to the fact that by G. S. 1894, § 739, county treasurers are expressly relieved from all liability in case of the failure or bankruptcy of a duly-designated depository, and it is urged that this is one of the highest evidences of a legislative intent to relieve a state treasurer under like circumstances. Probably two views can be taken of this, but, from the same premises, we reason to the very opposite conclusion. It seems to us that where we find a law expressly exempting county treasurers from liability, under these same circumstances, and discover that there is no like provision in reference to state treasurers, the only legitimate inference to be drawn is that the legislature intended that the state treasurer should remain liable in case of loss growing out of the failure or bankruptcy of a depository. Our conclusion on this point is emphasized by the fact that county boards of auditors select and designate county depositories; county treasurers having no voice in the matter.

Another point raised by the defendants' answer is to the effect that a portion of the money in question was deposited by defendant Bobleter during his first or second term of office, and that this deposit remained undiminished and undisturbed during his last term, for which term the defendant sureties are responsible only. Defendant Bobleter was his own successor as state treasurer in 1893, and he must be deemed to have received from himself, at the beginning of that term, the moneys which were then deposited in the designated banks, and which were shown by his books to be on hand on the first Monday in January. The retention of the deposits in the bank, and the adoption of the entries upon his books, made during his second term, were, in law, official acts, performed during his last or third term, and binding upon the sureties for that term. This matter is fully covered by a recent case in this court

(Board of Education v. Robinson, 81 Minn. 305, 84 N. W. 105), and needs no further discussion.

As it is unnecessary, we decline to consider the question raised by counsel for the state as to the unconstitutionality of any legislation which will exempt a state treasurer and his sureties from absolute liability for the safe-keeping of public funds.

The result is that the order must be and is affirmed.