TOWNSHIP OF ANGUS, POLK COUNTY, v. J. W. CAMPION AND ANOTHER.[1]

March 6, 1931.

No. 28,270.

*Rasmus Hage,* for appellant.

*Abbott, MacPherran, Dancer, Gilbert & Doan,* for respondent Maryland Casualty Company.

HILTON, J.

Plaintiff appeals from an order denying its motion for a new trial.

Action by the township of Angus, Polk county, to recover on the official bond of J. W. Campion, township treasurer, upon which bond the defendant casualty company was a surety.

Campion had been the treasurer of the township for many years under annual bonds furnished with personal sureties. He was elected to succeed himself in 1926 and then gave a bond with the casualty company as surety. He was re-elected in each of the two

[1]Reported in 235 N. W. 615.

following years, and by proper indorsements the surety bond of the preceding year was renewed.

Another man was elected as treasurer in 1929. Campion did not turn over to such successor the amount of money that he should have had in his possession belonging to the township, such amount being that which properly appeared on the books and report of Campion as treasurer for his last year in office. He was short about $2,300 (the amounts hereinafter referred to will· be approximate). The defalcation had however taken place in one or more of the yearly terms prior to the first one upon which the casualty company became surety.

At the time of the going into effect of the 1926 surety bond the treasurer's books and his official report showed $3,400 on hand; he however had only $1,100. This shortage remained about the same and was concealed until a different treasurer was elected. Campion had at all times deposited the township moneys in his personal account in a bank, commingling the same with his own funds and using the deposits indiscriminately for personal and township purposes.

The evidence conclusively shows and the court found that all the money that came into his hands as treasurer during the three years here in question (including that which he turned over to himself in 1926) was accounted for and paid out in the manner provided by law. The only question here involved is as to whether under the facts stated the court properly ordered judgment in favor of defendants for costs and disbursements.

In Board of Education v. Robinson, 81 Minn. 305, 84 N. W. 105, 83 A. S. R. 374, it was held:

"Where a person holds a public office for two or more successive terms, and executes a new bond, with new sureties, for each term, and a defalcation occurs on the part of the officer, the sureties on the bond given for the term during which the defalcation occurred are alone liable.

"Prima facie the sureties on the last bond are liable for such funds as are properly chargeable to the officer, as shown by the

books of his office at the time of his retirement, and the burden is upon such sureties to show that the defalcation in fact occurred during a prior term."

The Robinson case (decided in 1900) established the law for this state thereon. It has not been changed; it is sound and is adhered to.

Order affirmed.

STONE, J. (concurring).

Out of deference to what is said to be the weight of authority and the construction put on the record in this case by the majority, I concur in the result. In addition to Board of Education v. Robinson, 81 Minn. 305, 84 N. W. 105, 83 A. S. R. 374, see County of Pine v. Willard, 39 Minn. 125, 39 N. W. 71, 1 L. R. A. 118, 12 A. S. R. 622; State v. Bobleter, 83 Minn. 479, 86 N. W. 461; Cowden v. Trustees of Schools, 235 Ill. 604, 85 N. E. 924, 126 A. S. R. 244, annotated 23 L.R.A.(N.S.) 131; and 22 R. C. L. 513 and 515.

It is not to be overlooked that Campion's bond was conditioned not only for the payment "without delay to the officer entitled by law thereto" of all moneys which came into his hands as treasurer, but also that he would "faithfully and impartially, in all things, during his continuance in said office, perform the duties thereof without fraud, deceit or oppression." Plainly and to a grievous extent this latter condition was violated. So, while we may well hold that the books and official reports of the principal make only a prima facie case against his surety, I submit that we might logically and justly go farther and say that such prima facie case is not overcome without a showing by the surety that no loss resulted from the malfeasance which did occur during the period of the bond in question.

It is easily possible that the fraudulent concealment of a defalcation, and Campion seems to have been guilty of much of that during the terms for which he was bonded by Maryland Casualty Company, may itself result in loss. Very justly the primary obligation to make good a conversion should be upon the sureties who were such when the conversion occurred. But if in a succeeding term, when

other sureties were liable, there followed a fraudulent concealment of such defalcation, there might be such a resulting delay of discovery of the loss as to permit the sureties primarily liable to abscond, die, or become insolvent. In such a case there is ordinarily a false assurance of a given state of facts by the principal and such reliance thereon by the obligee to its loss as to furnish all the essentials for a complete estoppel against both principal and surety.

I cannot agree all the way in a decision which assumes that the surety for a succeeding term may escape liability by showing merely that the initial defalcation occurred in a term preceding its suretyship, although, as here, the bonded official was guilty of grievous malfeasance in the term for which the codefendant was his surety.