### A. L. BROMEN v. R. A. O'CONNELL AND OTHERS. WESTERN SURETY COMPANY v. VINCENT WILLIAM DIEKEN.[1]

February 26, 1932.

Nos. 28,855, 28,868.

[1]Reported in 241 N. W. 54.

410

 

*J. V. Williams,* for appellant.

*A. L. Bromen, A. R. English,* and *Clarence J. Donnelly,* for respondent.

Stone, J.

Action by a guardian against a former guardian and two sureties. As to one surety, defendant Bot, there was a dismissal. There was consolidated with this action below an appeal from an order of the probate court allowing the final account of O'Connell as guardian and charging him with the balance for which the judgment appealed from was entered. Defendant Western Surety Company appeals from the judgment against it for $3,835.70, exclusive of costs.

■ We consider the facts as stated in the frank and concise brief for appellant. O'Connell became guardian of the minor's estate in 1919, furnishing a bond with two personal sureties, defendant Bot being one of them. May 17, 1922, he gave another bond with defendant Western Surety Company as surety in the penal sum of $5,000. O'Connell was removed as guardian December 27, 1930. The sum for which judgment was entered represents a defalcation committed during the period covered by his first bond, that is, at a time before appellant became surety on the second bond, which covered approximately the last eight years of O'Connell's guardianship. It was conditioned, restricting its scope within statutory limitations (see Anderson v. Munch, 29 Minn. 414, 13 N. W. 192, and Fairmont C. S. Mfg. Co. v. Davison, 122 Minn. 504, 142 N. W. 899, Ann. Cas. 1914D, 945) for the "faithful discharge of all the duties of his trust according to law." G. S. 1923 (2 Mason, 1927) § 8907. How that condition could be fulfilled, how even O'Connell's most primary duty as guardian could be performed without a faithful accounting at the end of his trust, we cannot perceive. In

that fundamental duty he failed in the pecuniary measure indicated by the judgment. So his surety cannot escape liability, which is both imposed and measured in exact accord with the tenor and purpose of the bond.

True, where a public official, elected or appointed for a definite term, serves two or more such terms in succession, the liability for a defalcation falls upon his sureties who were such at the time, to the exclusion, in the absence of special circumstances, of the sureties for a succeeding term. Board of Education v. Robinson, 81 Minn. 305, 84 N. W. 105, 83 A. S. R. 374; Township of Angus v. Campion, 183 Minn. 9, 235 N. W. 615. Asserting no controlling distinction between the bonds of public officers and those of guardians, it is argued for appellant that it is under no liability for the devastavit committed by O'Connell before appellant became his surety.

The premise of that argument is not sound. Between the coverage of the bonds of a guardian and those of public officers is a plain and controlling distinction. At the end of each term of a public officer there is usually, under the law, and in any event ought to be, a definite cut-off and audit, marking the end of the old term and liquidating the incumbent's liabilities resulting from that term. That he succeeds himself is a mere circumstance, wholly irrelevant to the legal transition from old to new that takes place. There is just as definite an end of one stewardship and the beginning of a new as though he were succeeded by another rather than himself. The nature and limits of his stated term and the fact that any official wrongdoing affects only affairs of the current term distinguishes the status of a public officer from that of a fiduciary, such as a guardian. The latter does not serve for a fixed term. His duty is continuous from beginning to end of his trust.

Such is the logic of the rule, supported by facts and harmonizing with the legal concept of successive official liabilities, which exempts sureties for a later from liability for defalcations of an earlier official term. Its justifying basis does not exist in the case of sureties for guardians or similar fiduciaries. They serve for but

one term, whereas a public officer who succeeds himself serves for successive terms. The duties of the one are unitary and continuous; those of the other divided into successive and definite periods. Hence, in the case of the public officer succeeding himself, the allocation of liability for wrongdoing to the sureties for the term in which it was committed.

If in the middle of his term an officer gives a new bond conditioned for the faithful performance of his duty, including that faithfully to account for public moneys, it must cover a defalcation occurring before the bond was given but during the then current term. For example, during his term a collector of taxes gave a new bond conditioned for the faithful discharge "of his duties for the whole term. In such a case the sureties are liable for sums received during the term in question, although received before the bond was given." Hudson v. Miles, 185 Mass. 582, 585, 71 N. E. 63, 65, 10 A. S. R. 370. Compare McMullen v. Winfield B. & L. Assn. 64 Kan. 298, 67 P. 892, 56 L. R. A. 924, 91 A. S. R. 236, where the same rule was applied to the bond of the officer of a private corporation.

Under bonds of the tenor of the one we are now considering, the sureties are held liable for the failure of their principal to account, even though the initial wrongdoing antedates the bond. The resulting duty to make good the loss continues to the end. Douglass v. Kessler, 57 Iowa, 63, 10 N. W. 313: Dugger v. Wright, 51 Ark. 232, 11 S. W. 213, 14 A. S. R. 48; Foster v. Wise, 46 Ohio St. 20, 16 N. E. 687, 15 A. S. R. 542; Abshire v. Rowe, 112 Ky. 545, 66 S. W. 394, 56 L. R. A. 936, 99 A. S. R. 302; Matthews v. Mauldin, 142 Ala. 434, 38 So. 849, 4 Ann. Cas. 344; Brooke v. Am. Sav. Bank, 207 Iowa, 668, 223 N. W. 500; Anno. 39 L.R.A.(N.S.) 961. See also Southern Surety Co. v. Tessum, 178 Minn. 495, 228 N. W. 326, 66 A. L. R. 1136. Our statute, G. S. 1923 (2 Mason, 1927) § 8914, is such that a new or additional surety for a guardian need not become such until the principal has been compelled, if need be, "to render and settle an account of all his prior doings."

It is said that "in most states if the bond does not expressly provide that it shall operate retrospectively, the sureties are not liable

for property received and converted or wasted by the guardian before the bond was given." 28 C. J. 1289.

We have given the cases cited in support of that dictum consideration. Some go to the extent stated, and some do not. Some are in point because of dicta rather than decision. To review them here would not be helpful. Of course, in the absence of apt language requiring it, fiduciary bonds are not given retrospective operation. We do not so apply the bond now in question. We simply apply the statutory language to the accomplishment of its plain purpose, which is to assure the performance of the guardian's future duty finally and faithfully to account for the moneys due from him as guardian. It is as to the breach of duty after the giving of the bond that we enforce its obligation. There was, subsequent to the bond, a malfeasance covered by it, a failure faithfully to discharge "the duties of his trust according to law," with resulting damage in the amount of the judgment, which accordingly must be affirmed.

So ordered.