# EDWARD LINDQUIST v. EMIL THANG AND OTHERS.[1]

March 17, 1933.

No. 29,298.

*Edward Lindquist,* pro se.
*Frank Murray,* for respondents.

HOLT, JUSTICE.

Action on a guardian's bond to recover $1,000 which the guardian failed to turn over to plaintiff, the successor to the principal in the bond. There was a trial to the court of the issues between plaintiff and defendants, the sureties. It does not appear that the principal, Emil Thang, has been served. Findings were made in favor of the sureties. From the judgment entered thereon plaintiff appeals. There is no settled case, so the only question presented by the appeal is whether the findings of fact warrant the conclusion of law and judgment that the respondents are not liable.

[1]Reported in 247 N. W. 506.

The facts found are in main these: Prior to August 26, 1926, one W. C. Hanson was and had been for some time the duly appointed and qualified guardian of the estate of Brede Strand, an incompetent. Hanson had been in charge of the State Bank of Sacred Heart, Minnesota, and on that day had on deposit in said bank to his account as such guardian $1,107.67, the property of the ward. At that time Hanson transferred to Emil Thang his interest in the bank, and Thang thereafter became the chief executive of the bank. On August 26, 1926, Hanson filed in the probate court his final account as guardian of Strand and resigned as such. The resignation was accepted by the probate court, his account was approved, his bondsmen discharged, and Thang was duly appointed guardian of Strand "in the place and stead of W. C. Hanson, resigned." The court also ordered that upon Thang's filing his oath and bond in the sum of $3,000 with sufficient sureties and conditioned according to law, letters of guardianship be issued to him. In the same order, September 13, 1926, was named as the date for a hearing upon the final account of Hanson, and Thang, who was present, filed a waiver of notice of the hearing. The final account so rendered was full and correct, but was not formally allowed or settled until about two years later. Hanson left the state, surrendering the deposit account of the ward to Thang.

On September 1, 1926, Thang assumed and exercised full control and charge of the deposit account of the ward, and transferred $1,000 thereof to his private account and appropriated the same to his own use. Not until July 31, 1928, did Thang file his oath and the bond in suit, which had been executed by the respondents on May 19, 1928, and thereupon letters of guardianship issued to him, and as part of the same transaction the probate court approved and settled the final account of Hanson, his predecessor. Thang did not apprise the probate court or his sureties that he had appropriated the $1,000 of the ward's funds in the bank. April 23, 1930, Thang was removed as guardian; and in his place plaintiff was appointed and duly qualified. Plaintiff demanded that Thang file his account as such, but the latter has wholly failed and refused to make an accounting of his guardianship and has failed

to turn over to plaintiff any of the ward's funds save $107.67. No proceeding appears to have been taken to compel his accounting to the probate court; but that court has authorized the bringing of this action.

The court further finds that the $1,000 to recover which this action is brought is the identical money Thang appropriated to his own use nearly two years before the execution by respondents of the bond in suit and the qualification of Thang as guardian, and that the only funds of the ward in his hands after qualifying was the $107.67, which he turned over to plaintiff upon the latter's appointment. Hence the court concluded that the obligations of the bond did not make the sureties answerable for the misappropriation that Thang made prior thereto, and further that the fact that the final account of Hanson, showing funds in the amount of $1,107.67 belonging to the ward, was approved at the same time the bond in suit was approved does not render the sureties thereon liable.

Respondents raise the proposition that since there has been no accounting by Thang an action on the bond is not maintainable until an adjudication by the probate court of the liability of the guardian Thang. It is clear that the district court did not base its decision upon that ground. Had there been a final accounting respondents would have been bound thereby. 3 Dunnell, Minn. Dig. (2 ed. & Supp.) § 4125a. Upon the facts alleged in the answer, the stipulation, and the findings, Thang, upon rendering his final account in the probate court, would be held accountable for the $1,000 here involved. Respondents raised no objection by their answer that there had been no accounting by Thang in the probate court; and since that court itself, knowing that there had been no accounting by him, authorized this action on the bond to be brought, it seems to us the action may be determined on the merits.

Hanson as guardian resigned and was discharged and left the funds in the control of Thang, who was appointed his successor. Thang as acting guardian was responsible and accountable for those funds. He acknowledged to the probate court that Hanson had turned over to him $1,107.67, which included the $1,000 sued

for. So there can be no doubt as to Thang's liability to account for the $1,000. The court also finds that although a hearing had been set on Hanson's final account as guardian for September 13, 1926, no formal hearing or allowance was had until July 31, 1928, when it was approved and allowed, and as a part of the same transaction Thang qualified as his successor and filed the bond in suit. So when respondents became sureties the probate records revealed that Thang, their principal, was responsible for $1,107.67, funds of the ward received from Hanson, his predecessor. Although Thang had appropriated $1,000 of this money on September 1, 1926, the probate records showed that he was accountable therefor when respondents became sureties, binding themselves that he would "well and faithfully discharge all the duties of his trust as representative of said estate according to law." We hold that this bond required Thang to account for all moneys of the ward which he acquired while acting as guardian, even though he had not qualified. By virtue of the order of appointment he obtained control of the fund from his predecessor. The syllabus in Bromen v. O'Connell, 185 Minn. 409, 241 N. W. 54, holds in regard to the guardian's bond:

"Although a defalcation occurred before that bond was given, the surety is liable because of the guardian's failure to perform the duty finally to account for and pay over to his successor the amount of the defalcation."

Among the cases cited to sustain the proposition, Brooke v. American Sav. Bank, 207 Iowa, 668, 223 N. W. 500, is peculiarly in point here, and requires a conclusion of law that plaintiff recover against the respondents the sum of $1,000 with interest as prayed in the complaint. We can see no difference between a misappropriation for private use of ward's fund and a misappropriation for an ostensible use of the estate as far as concerns the liability of the sureties.

The judgment is reversed with directions to the court to amend the conclusions of law and enter judgment for plaintiff in accordance with this opinion.

OLSEN, JUSTICE, took no part.