IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO



IN RE THE GUARDIANSHIP/ )
CONSERVATORSHIP OF )
 )
LUCRECIA PACHECO, )
 )
Deceased. )    2 CA-CV 2007-0135
 )    DEPARTMENT B
 )
ESTATE OF LUCRECIA PACHECO, by )    O P I N I O N
successor guardian and conservator Phyllis )
Cornell, )
 )
Plaintiff/Appellee/ )
Cross-Appellant, )
 )
v. )
 )
HARTFORD FIRE INSURANCE CO., )
a Connecticut corporation, )
 )
Defendant/Appellant/ )
Cross-Appellee. )
 )

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. GC-2004-0484

Honorable Clark W. Munger, Judge

AFFIRMED

William E. Druke                                          Tucson

   and

Kate McMillan                                            Tucson

   and

John Tully                                               Tucson
                                        Attorneys for Plaintiff/
                                        Appellee/Cross-Appellant

Mesch, Clark & Rothschild, P.C.
  By Melvin C. Cohen and Scott H. Gan                Tucson
                                        Attorneys for Defendant/
                                        Appellant/Cross-Appellee

V Á S Q U E Z, Judge.

¶1        Defendant/appellant Hartford Fire Insurance Company appeals from the trial court's grant of summary judgment in favor of plaintiff/appellee Estate of Lucrecia Pacheco. The judgment holds Hartford, as surety on a conservator's bond, liable for misappropriations by the conservator that occurred prior to the bond's issuance and awards the Estate prejudgment interest on the amount of the bond. The Estate cross-appeals from the trial court's denial of its request for attorney fees. For the reasons below, we affirm.

**Factual and Procedural Background**

¶2        We review the facts in the light most favorable to Hartford, the party against whom summary judgment was entered. *See Owens v. M.E. Schepp Ltd. P'ship*, 218 Ariz. 222, ¶ 7, 182 P.3d 664, 666 (2008). Because Lucrecia Pacheco was suffering from

2

dementia, in August 2001, the Cochise County Superior Court appointed a law firm to serve as her guardian and as the conservator of her estate. According to an inventory filed by the firm, Pacheco's assets consisted of a 780-acre ranch in Benson, Arizona, and approximately $12,000 in financial investments and livestock. In July 2002, Pacheco's niece, Cecilia Talvy, petitioned the trial court to terminate the law firm's appointment and to appoint Talvy as successor guardian and conservator. The court granted Talvy's petition, required her to post a $9,000 bond, and ordered that "no property may be sold without Court approval."[1]

¶3        In April 2003, Talvy petitioned the court for permission to sell Pacheco's ranch for $445,000. The court granted the petition but ordered Talvy to post a $309,000 bond before completing the sale. In May, without having posted the additional bond, Talvy received the proceeds from the sale—a check for approximately $240,000 and a promissory note for $145,000.[2] When the escrow agent for the sale apparently refused to record the deed until Talvy had first obtained the additional bond, the court, at Talvy's request, ordered the deed recorded. The court then granted Talvy's petition to reduce the amount of the bond to $200,000 but also ordered her to deposit $109,000 of estate funds into a

---

[1]The letters of conservatorship issued to Talvy did not mention this restriction.

[2]The record indicates the check was payable to Talvy personally rather than as conservator of the Estate.

restricted bank account.[3]   After receiving the sale proceeds in May, Talvy began to misappropriate thousands of dollars of the Estate's assets.

¶4          In October 2003, Talvy submitted an application to Hartford for a $200,000 surety bond.  The application falsely stated that the Estate had cash assets of $309,000 and that Talvy was not indebted to the Estate.  On October 13, Hartford issued the requested bond, the terms of which provided: "Now, therefore, if said Principal shall faithfully execute the duties of the trust according to the law, then this obligation to be void, otherwise to remain in full force and effect."  The court approved the $200,000 bond on November 19, and the original $9,000 bond was exonerated.

¶5          In December 2003, Talvy's attorney, Nathan Hannah, filed with the court proof that Talvy had deposited into the restricted account estate funds of only $93,477, rather than $109,000.  The next week, Hannah informed the court that Talvy had sold the $145,000 promissory note and had $40,000 of the proceeds in her possession.  He asked the court to order Talvy to deposit all proceeds from the sale into the restricted account and immediately provide a full accounting of her expenditures as conservator.[4]   The court granted the request and ordered Talvy to provide an accounting by January 2004.  When she

---

[3]Talvy had been unable to obtain a bond for $309,000, apparently due to poor credit and a prior bankruptcy, information she had disclosed to the bonding agent before the bond was issued.

[4]Talvy's attorney, like Talvy, owed a fiduciary duty to Pacheco. *See Capitol Indem. Corp. v. Fleming*, 203 Ariz. 589, ¶ 6, 58 P.3d 965, 967 (App. 2002).

failed to do so, the court granted a petition filed by Pacheco's counsel, Christopher Hitchcock, to terminate Talvy's appointment and appoint a successor conservator. The court appointed Phyllis Cornell, a certified professional fiduciary, as Pacheco's successor guardian and conservator. In May, the case was transferred from Cochise County to the Pima County Superior Court at the request of the new conservator.

¶6         In January 2005, Hitchcock lodged a demand with Hartford on Pacheco's behalf for the entire amount of the bond, plus interest and attorney fees, based on Talvy's violation of her duties as conservator. At the same time, Hitchcock also paid Hartford the annual premium on Talvy's bond, which had been due in October. In March 2005, Hitchcock requested an order to show cause why Talvy had not provided an accounting of her expenditures as conservator.

¶7         After Talvy subsequently submitted an accounting in May, the successor conservator and Hitchcock challenged it, claiming Talvy had failed to account for more than $200,000 of Estate assets and seeking an order surcharging Talvy for that amount. The trial court granted Hartford's request to intervene in the action. Following a one-day bench trial in November, the court found Talvy had failed to account for $153,222.35 in Estate assets. The court entered a surcharge judgment against Talvy in the amount of $198,721.86, which included costs and fees for the successor conservator, her attorney, and Hitchcock. Pacheco died two weeks before the surcharge judgment was entered against Talvy.

¶8        In October 2005, Hartford and Hitchcock on Pacheco's behalf had submitted cross-motions for summary judgment on whether Hartford would be liable for the misappropriations by Talvy that occurred prior to issuance of the surety bond. The court ruled in the affirmative, stating: "A conservator, having engaged in fiduciary malfeasance, has a continuing duty to recover misappropriated or mismanaged assets. The defendant's suretyship, therefore, extends to acts of the fiduciary which occurred prior to the effective date of the bond."

¶9        After the court entered the surcharge judgment, Hartford refused to pay. The Estate then filed a petition seeking an order that Hartford pay the surcharge amount plus accrued interest. Hartford raised several defenses to the petition, and the Estate moved for summary judgment. Hartford responded that its obligation under the bond was voidable because, *inter alia*, Hitchcock had known of Talvy's misappropriations before the bond was issued but had failed to inform Hartford. The court granted the Estate's motion and ordered Hartford to pay the Estate the $200,000 bond amount. The court initially declined to award prejudgment interest but, after a hearing on the issue, awarded prejudgment interest from the date of the surcharge judgment. Hartford now appeals from that decision, and the Estate cross-appeals from the trial court's denial of its request for attorney fees.

**Discussion**

**I.        Liability on Bond**

6

¶10    Hartford and the Estate do not dispute that Talvy began to misappropriate Estate assets after she sold Pacheco's ranch but before Hartford issued its bond. The first issue we must address, therefore, is whether Hartford, as surety on Talvy's bond, was properly held liable for Talvy's misappropriations occurring before the bond was issued. Because this presents a question of law, our review is *de novo*. *See Mohave Elec. Co-op., Inc. v. Byers*, 189 Ariz. 292, 308, 942 P.2d 451, 467 (App. 1997) ("[W]here a court applies a theory of liability to facts, its ruling is a mixed question of law and fact which is reviewed *de novo*.").

¶11    Generally, a surety on a bond is not liable for actions the principal committed before the bond was issued. *See Ferrarell v. Robinson*, 11 Ariz. App. 473, 477, 465 P.2d 610, 614 (1970) (surety on real estate broker's bond not liable for misappropriations "prior to the effective date of the bond").[5] This rule, however, does not necessarily apply to bonds issued for the protection of persons and estates. *See In re Foodsource, Inc.*, 130 B.R. 549, 561 (Bankr. N.D. Cal. 1991); *S. Surety Co. v. Burney*, 126 P. 748, 751 (Okla. 1912); *see also* 11A John Appleman & Jean Appleman, *Insurance Law and Practice* § 6713, at 415

---

[5]We note that in *Ferrarell* the plaintiff argued the surety on a broker's license was liable for misappropriations that occurred prior to the effective date of the bond or, alternatively, for the failure of the corporate entity, of which the broker was an officer and sole shareholder, to complete performance on the contract during the bond term due to a lack of funds caused by the prior misappropriations. 11 Ariz. App. at 477, 465 P.2d at 614. The court rejected the first claim outright. *Id*. But, although ultimately deciding the issue on different grounds, it acknowledged the possibility the corporation could be liable based on the failure to complete performance. *Id*.

(1981). Although Arizona courts have not addressed this question, other jurisdictions have held the surety liable on such bonds in certain circumstances.

## A. Duty to Recover if Solvent

¶12 As Hartford points out, several courts have found a surety on a guardian's or conservator's bond liable for misappropriations that occurred prior to issuance of the bond if the principal was solvent at any time during the term of the bond. *See Foodsource*, 130 B.R. at 562; *King v. Jones*, 971 S.W.2d 916, 922 (Mo. Ct. App. 1998). These courts have determined that, although the misappropriations occurred before the bond issued, the fiduciary breached his or her duty *during* the term of the bond by failing to recover those assets from himself or herself when able to do so. *See Aetna Indem. Co. v. State*, 57 So. 980, 982-83 (Miss. 1912).

¶13 In this case, the trial court concluded that "A.R.S. § 14-5411 requires a conservator to 'furnish a bond conditioned upon faithful discharge of all duties according to law.' A conservator, having engaged in fiduciary malfeasance, has a continuing duty to recover misappropriated and mismanaged assets. The defendant's suretyship, therefore, extends to acts of the fiduciary which occurred prior to the effective date of the bond." Although we decline to base liability in this case on Talvy's continuing duty to recover misappropriated assets, we will affirm the trial court's ruling if it is correct for any reason. *See Odom v. Farmers Ins. Co. of Ariz.*, 216 Ariz. 530, ¶ 6, 169 P.3d 120, 122 (App. 2007).

¶14        Hartford argues the trial court erred "when it determined the bond should be applied retroactively to Talvy's conduct occurring before the bond was issued" because, as the Estate has stipulated, Talvy was insolvent during the time of her conservatorship. However, we question the relevancy of solvency in these situations, where, as in this case, a court-ordered, mandatory bond was issued for the protection of an innocent party. *See* A.R.S. § 14-5411(A) (requiring conservator to post bond for value of property in estate). We do not believe the cases making solvency a factor in determining a surety's liability adequately explain the rationale for doing so. But, despite our concerns about the validity of the rule limiting the application of a continuing duty on the basis of insolvency, we need not address this argument because Hartford's liability does not hinge on the timing of the misappropriations themselves. Rather, Hartford's liability arises from Talvy's failure to account for and pay over the assets during the bond term.

**B. Duty to Account and Pay Over**

¶15        Some courts confronted with this issue have held the surety liable for misappropriations preceding issuance of the bond, regardless of the principal's solvency, because the principal has breached his or her duty to account for and pay over the estate's assets during the term of the bond. *See Foodsource*, 130 B.R. at 563; *Lindquist v. Thang*, 247 N.W. 506, 507 (Minn. 1933). Under this broader theory of liability, the surety "is not held liable for the defalcations or misappropriation, committed prior to the bond's issuance, *per se*; rather, the surety is held liable for the trustee's failure to account for those

9

misappropriated or converted funds and to pay them over *during* the term of the later-filed

bond." *Foodsource*, 130 B.R. at 563.

¶16      In *Southern Surety*, a court-appointed guardian misappropriated funds from

the sale of real estate belonging to his ward before the surety issued its bond. 126 P. at 748.

In finding Southern Surety liable for the misappropriated funds, the court adopted the

following reasoning:

> The sureties on the bond of a guardian contract with reference to the judgment of a court, and agree that their principal will do what he is ordered to do, when his accounts are settled by the court. Such liability is based upon the obligation of the guardian to make a true account, and to pay over and deliver to the person lawfully entitled to receive the same the moneys and property found due upon his final settlement with the court. It is immaterial when the conversion or misappropriation took place . . . . When the settlement is had, the amount of his indebtedness adjudged, and the order of the court made, directing him to turn over that amount, there is nothing left for him to do but pay over the amount or appeal; and if such judgment and order become final, and are not obeyed by the guardian, a breach of the bond is effected, and the sureties are liable for the default.

*Id*. at 750-51.

¶17      Similarly, in *Lindquist*, a court-appointed guardian misappropriated $1,000

of his ward's assets. 247 N.W. at 507. Nearly two years later, he filed a guardian's bond

with the court. *Id.* In holding the sureties on the bond liable for the prior misappropriation,

the court noted that, by issuing the bond, the sureties were "binding themselves that [the

guardian] would 'well and faithfully discharge all the duties of his trust as representative of

10

the estate according to the law.'" *Id.* Because the bond "required [the guardian] to account for all moneys of the ward which he acquired while acting as guardian," the sureties were liable when the guardian failed to do so. *Id.*

¶18 Hartford contends, as it did below, that this court should not adopt the continuing duty theory of liability because "[t]hese courts unbelievably reason that the conservator's fiduciary duty is not breached by the theft of the ward's funds" but, rather, hold the "theft of assets continues until such time as the conservator files an appropriate accounting demonstrating the inability to recover the misappropriated funds."[6]

¶19 Contrary to Hartford's assertion, misappropriating funds was not the only way Talvy had breached her fiduciary duties to Pacheco's estate. According to § 14-5411(A), as the trial court correctly noted, a conservator is generally required "to furnish a bond conditioned upon faithful discharge of all duties according to law." These duties include the duty of a conservator to act as a fiduciary, A.R.S. § 14-5417, and to file an accounting of his or her administration of the estate annually, A.R.S. § 14-5419. In accordance with these statutes, the bond Hartford issued Talvy stated it would remain in effect until Talvy "faithfully execute[d] the duties of the trust according to the law."

---

[6]Hartford also contends in its reply brief that it should not be liable for prior misappropriations because Talvy obtained the bond for purposes "solely related to the sale of Pacheco's ranch" and not pursuant to A.R.S. § 14-5411(A), the statute requiring conservators to post a bond for the value of the estate's property. Because this issue was raised for the first time in Hartford's reply brief, thereby depriving the appellee of the opportunity to respond in its answering brief, we do not address it. *See Ariz. Dep't of Revenue v. Ormond Builders, Inc.*, 216 Ariz. 379, n.7, 166 P.3d 934, 940 n.7 (App. 2007).

11

**¶20** Thus, Talvy's duties under both the statutes and the terms of the bond required her to act as a fiduciary for Pacheco and to account for and turn over all assets Talvy controlled as Pacheco's guardian and conservator of her estate. *See generally* A.R.S. §§ 14-5417, 14-5419. When Talvy failed to faithfully perform these duties, Hartford became liable for her defaults pursuant to the express terms of the bond. Her misappropriations did not affect the obligation Hartford undertook to insure that Talvy would also faithfully account for the funds she controlled as conservator. We therefore find that because the bond "required [Talvy] to account for all moneys of [Pacheco] which [s]he acquired while acting as guardian," and she failed to do so during the bond term, Hartford is liable for that failure. *See Lindquist*, 247 N.W. at 507.

**¶21** We note that the apparent majority of courts and authorities addressing this issue have reached this conclusion. *See Foodsource*, 130 B.R. at 563 (noting "majority of cases" hold surety liable for prior misappropriations when conservator fails to account and pay over assets during term of bond); *see also* Appleman & Appleman, *supra* § 6713, at 415 (surety generally liable for misappropriations by conservator occurring "prior to the surety's assumption of liability"); 11 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 166:63, at 166-54 (3d ed. 1998) (surety liable for conservator's misappropriations "without regard to the time when his or her conversion or misappropriation of such moneys took place"); W.W.A., Annotation, *Liability of sureties on bond of guardian, executor, administrator or trustee for defalcation or deficit occurring before bond was given*, 82

12

A.L.R. 585 (1933) (listing cases). *But see Bolmer v. U.S. Fid. & Guar. Co.*, 11 F. Supp. 560, 563 (W.D. Ky. 1935) (surety not liable for breach occurring prior to issuance of bond); *King v. Jones*, 971 S.W.2d 916, 919-22 (Mo. App. 1998) (same; listing cases).

¶22        Hartford additionally contended at oral argument that even if this court adopts a general rule imposing liability on the surety for the failure to account and pay over assets during the bond term despite misappropriations occurring prior to the bond's isssuance, liability should not be imposed in this case because the parties were aware of Talvy's malfeasance before the bond was issued. This argument is essentially a claim of estoppel, and because it was not argued in Hartford's appellate briefs, we reject it as untimely. *See Ariz. Dep't of Revenue v. Ormond Builders, Inc.*, 216 Ariz. 379, n.7, 166 P.3d 934, 940 n.7 (App. 2007) (arguments not raised in opening brief waived on appeal). However, to the extent this claim is arguably related to the issue of fraud in the inducement, we address it in the following section.

## II.    Fraudulent Inducement

¶23        Hartford further contends the court erred in granting summary judgment because, before January 2005, when Hitchcock paid the annual bond premium, he "was aware of facts that materially increased the risk of Talvy['s] breaching her fiduciary duty" but failed to inform Hartford of these facts. Hartford argues its obligation under the bond is therefore voidable pursuant to the Restatement (Third) of Suretyship and Guaranty §

13

12(3) (1996). That section provides that a secondary obligation is voidable by the secondary obligor if, before the obligation becomes binding, the obligee:

> (a) knows facts unknown to the secondary obligor that materially increase the risk beyond that which the obligee has reason to believe the secondary obligor intends to assume; and

> (b) has reason to believe that these facts are unknown to the secondary obligor; and

> (c) has a reasonable opportunity to communicate them to the secondary obligor.

Restatement § 12(3). The trial court implicitly rejected this argument, a decision we review *de novo*. *See Mohave Elec.*, 189 Ariz. at 308, 942 P.2d at 467.

¶24 Hartford's argument that its obligation is voidable under the Restatement is based on the assumption that the obligation did not become binding until January 2005, when Hitchcock paid the annual bond premium. Although the record makes clear that Hitchcock was aware before January 2005 that Talvy had breached her fiduciary duties—she had by then failed to abide by several court orders and, indeed, Hitchcock had sought her removal as conservator—we disagree that this is when Hartford's obligation became binding.

¶25 Hartford issued the bond to Talvy on October 13, 2003, and the trial court accepted it on November 19, 2003. We therefore fail to see how Hartford's obligation on the bond became binding any later than November 19, 2003. The terms of the bond do not provide that Hartford's obligation became binding only upon payment of the premium; rather, they state: "Know all men by these presents, that . . . Cecilia Talvy . . . and Hartford

14

*. . . bind ourselves . . .* firmly by these presents." (Emphasis added.) Hitchcock submitted an affidavit stating that, before November 19, 2003, he did not know Hartford had issued a bond to Talvy and had "no personal knowledge regarding Talvy's financial affairs, reputation, or character." Hartford has not contested these averments. Thus, we find no basis for holding the bond voidable based on Hitchcock's failure to inform Hartford of certain facts about Talvy; by the time Hitchcock knew those facts, Hartford's was already obligated on the bond. *See* Laurence P. Simpson, *Simpson on Suretyship* § 84 at 419 (1950) ("If, subsequent to delivery, the bond is approved and accepted, it binds the surety from the date of delivery . . . .").

¶26 Hartford additionally contends its obligation is voidable because Hitchcock was aware of Talvy's "material misrepresentations or omissions . . . prior to the time the bond was filed with the Cochise County trial court." Hartford points out that, before November 19, 2003: (1) Talvy had disregarded the trial court's order not to complete the sale of Pacheco's ranch without first filing a bond for $309,000, thus Hitchcock should have known she had violated her fiduciary duties; and (2) because the sale price of the ranch was $445,000, Hitchcock should have known Talvy had misappropriated approximately $150,000 when she asked that the amount of the bond be reduced to $200,000 yet promised to deposit only $109,000 into a restricted account. However, Hartford has not contested Hitchcock's averments that he was unaware Talvy had applied for a bond until the court approved the bond on November 19, 2003. Thus, even assuming Hitchcock had known or

15

suspected that Talvy had breached her fiduciary duties before the court accepted the bond, he would have been unable to inform Hartford of that fact.

### III. Prejudgment Interest

**¶27** In July 2007, the trial court entered judgment against Hartford for $198,721.86, the amount of the surcharge judgment against Talvy, and further awarded the Estate "interest at the statutory rate" on that amount from May 10, 2006, the date of the surcharge judgment, until paid. Hartford contends the court erred in awarding prejudgment interest because a surety may not be held liable for an amount more than the penal sum of its bond.[7] The Estate responds that the award was proper because in Arizona a party is entitled to prejudgment interest on a liquidated claim as a matter of right. Entitlement to prejudgment interest is a question of law that we review *de novo*. *See John C. Lincoln Hosp. and Health Corp. v. Maricopa County*, 208 Ariz. 532, ¶ 39, 96 P.3d 530, 542 (App. 2004).

**¶28** Generally, as the Estate points out, prejudgment interest is awarded on any liquidated claim, whether based in contract or tort. *See id.* "A claim is liquidated if the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance upon opinion or discretion." *Id., quoting* Charles T. McCormick, *Handbook on the Law of Damages* § 54, at 213 (1935). Examples of

---

[7]Penal sum is defined as "[t]he monetary amount specified as a penalty in a penal bond." *Black's Law Dictionary* 1153 (7th ed. 1999).

liquidated claims include "claims upon promises to pay a fixed sum, claims for money had and received, claims for money paid out, and claims for goods or services to be paid for at an agreed rate." *Id., quoting* McCormick, *supra* § 54, at 213.

¶29 Here, it is undisputed that Hartford's liability on the bond is based on a liquidated claim. Hartford, however, contends the general rule is inapplicable to the present situation as a matter of law because A.R.S. § 14-5412(A)(4) precludes an award of prejudgment interest in excess of the penal sum of the bond. That statute provides: "The bond of the conservator is not void after the first recovery but may be proceeded against from time to time until the whole penalty is exhausted."

¶30 We agree with the Estate that this statute does not address whether prejudgment interest may be awarded in excess of the bond amount but, rather, provides that an estate may bring several claims against the bond until the penalty has been exhausted. We will not read into a statute "something that is not within the manifest intent of the legislature as gathered from the statute itself." *Willow Creek Leasing, Inc. v. Bartzen*, 154 Ariz. 339, 342, 742 P.2d 840, 843 (App. 1987). If the legislature had intended to limit a surety's liability to the penal sum of the bond, it easily could have done so in unequivocal terms. *See, e.g.,* Ky. Rev. Stat. Ann. § 62.070 ("Recovery against the surety shall be limited to the amount of the penalty fixed in the bond.").

¶31 Hartford also contends that "Arizona cases have consistently held that pre-judgment interest may not be awarded in addition to the penal sum of the bond." For this

17

proposition, Hartford cites *U.S. Fidelity & Guaranty Co. v. Christoffel*, 115 Ariz. 507, 566 P.2d 308 (App. 1977), in which it contends "the Court stated that the liability to [a] bonding company could *not* exceed the penal sum of the bond." That case, however, does not assist Hartford.

¶32　　　In *Christoffel*, a guardian obtained a bond for $50,000 and, for the following three years, paid an annual premium on the bond. *Id.* at 508, 566 P.2d at 309. In an action against the surety, the trial court found the bond was cumulative and imposed liability on the surety "for sums up to and including the penal sum of $50,000 for each and every year that the bond was in effect." *Id.* at 508-09, 566 P.2d at 309-10. On appeal, this court reversed, finding the bond was continuous, not cumulative. *Id.* at 510, 566 P.2d at 311. We then ordered the trial court to enter judgment for $50,000, the penal sum, "together with interest and costs." *Id.* at 511, 566 P.2d at 312. *Christoffel* was decided based on the probate code in effect prior to 1974, and it therefore does not even address whether current § 14-5412(A)(4) precludes an award of prejudgment interest. 115 Ariz. at 509, 510 n.2, 566 P.2d at 310, 311 n.2. But to the extent *Christoffel* is relevant, it demonstrates that although there may be no recovery on a bond in excess of the penal sum, the assessment of separate sums, related not to the bond, but to the cost of pursuing litigation, is not necessarily precluded.

¶33　　　Hartford additionally relies on *American Surety Co. of New York v. Hatch*, 24 Ariz. 66, 206 P. 1075 (1922), and *Ed Stearman & Sons, Inc. v. State ex rel. Union Rock*

*& Materials Co.*, 1 Ariz. App. 192, 400 P.2d 863 (App. 1965).  But these cases do not address the imposition of prejudgment interest.  Like *Christoffel*, they may fairly be read as supporting the proposition that damages on a bond may not exceed the penal sum of the bond.  *See Hatch*, 24 Ariz. at 76, 206 P. at 1078 ("in no event . . . could any excess damages be charged against any one of the bonds"); *Ed Stearman & Sons*, 1 Ariz. App. at 195, 400 P.2d at 866 ("total recovery of all claimants under the bond shall not exceed the bond's penal sum").  But the damages in this case are not at issue: the issue is whether prejudgment interest may be awarded on a judgment based on those damages.

**¶34**        Although, as Hartford stated at oral argument, it may be true that no Arizona case has explicitly awarded prejudgment interest against a surety on a bond of this nature, the rule in Arizona is that "[p]rejudgment interest is awarded as a matter of right on a liquidated claim."  *See John C. Lincoln*, 208 Ariz. 532, ¶ 39, 96 P.3d at 542; *accord In re Conservatorship of Huerta*, 41 P.3d 814, 817 (Kan. 2002) (noting "'weight of American authority'" permits recovery of prejudgment interest in excess of penal sum of bond), *quoting Burchfield v. Haffey*, 7 P. 548, 549 (Kan. 1885).  There is nothing in the language of § 14-5411(A) that precludes such an award and, although the terms of a private contract may in certain instances waive an entitlement under a statute or rule, that did not occur here.  We therefore conclude that because the claim was liquidated, the trial court properly awarded prejudgment interest.

**IV.    Attorney Fees**

¶35 At a hearing in April 2007, the trial court granted the Estate's motion for summary judgment against Hartford and announced its intention to address the Estate's motion for attorney fees. Counsel for the Estate told the court she was not prepared to address the issue of attorney fees, having only recently received correspondence from Hartford on the issue, but she nonetheless argued the Estate was entitled to fees because the case arose out of contract, Hartford had put up an "extraordinary" "amount of opposition," there was an insufficient legal basis for Hartford's position, and the disparity in the parties' relative size was considerable.

¶36 The court denied the motion for attorney fees, finding Hartford had not taken an unreasonable legal position, the law on the issue was unsettled in Arizona, and Hartford had made good faith arguments. The court stated: "[T]o the extent it's within my discretion, I don't think I can . . . award attorneys fees." Then, at a hearing the following month, counsel for the Estate reasserted its claim for fees, arguing they should be awarded because the case arose out of contract. The court again rejected that argument, stating: "[I]n my discretion, I'm not going to award attorney's fees. Whether this is a surety case or a contract case or something else, to the extent it's within my discretion, I'm not going to award attorney's fees, and I've stated the reason[s] why. I won't repeat those."

¶37 The Estate cross-appeals from that decision, claiming the court ruled prematurely on the issue of attorney fees. The Estate contends the court "should have waited until the merits were resolved" to decide the issue and should have given the Estate

20

"an opportunity to file a written application setting forth its points, arguments and legal authorities." As support for its argument, the Estate cites *Kim v. Mansoori*, 214 Ariz. 457, 153 P.3d 1086 (App. 2007). In that case, the trial court had granted the defendant's motion for partial summary judgment, finding the plaintiffs would not be entitled to an award of their attorney fees if they were successful on the merits of the case. *Kim*, 214 Ariz. 457, ¶¶ 3-4, 153 P.3d at 1088. Plaintiffs appealed from that decision, and this court found it lacked jurisdiction over the issue because the judgment was not an appealable, final judgment. We noted that "a party's entitlement to attorney fees cannot, in most cases, be determined until the court has first reached a decision 'on the merits of the cause.'" *Id.* ¶¶ 12, 14, *quoting* Ariz. R. Civ. P. 54(g)(2).

¶38 We find *Kim* inapposite here. The trial court ruled on the Estate's motion for attorney fees *after* determining the merits of the case and granting the Estate's motion for summary judgment against Hartford. The court set forth several reasons for denying the Estate an award of its fees, and we cannot say it abused its discretion.[8] *See Wheel Estate*

_____

[8]The Estate argued for the first time at oral argument that it was entitled to attorney fees below because Hartford's denial of liability for those misappropriations occurring after the bond was issued was contrary to the explicit language of § 14-5412(A)(1) and thus in bad faith. Section 14-5412(A)(1) imposes joint and several liability on the surety for damages caused by the conservator. Here, the estate contends that because $112,000 of the damages were incurred after Hartford had issued Talvy the bond, its denial of liability for that amount was in bad faith and justifies an award of attorney fees. However, the Estate failed to raise this claim prior to oral argument, and we therefore find it waived. *See Ormond Builders*, 216 Ariz. 379, n.7, 166 P.3d at 940 n.7.

*Corp. v. Webb*, 139 Ariz. 506, 508, 679 P.2d 529, 531 (App. 1983) (appellate court will not substitute its discretion for trial court's on whether to grant award of attorney fees).

**Disposition**

**¶39** For the reasons above, we affirm the trial court's entry of summary judgment in favor of the Estate, its decision to award prejudgment interest, and its denial of the Estate's request for attorney fees. The estate has requested attorney fees on appeal, but it has failed to state the statutory basis for such an award; we therefore deny the request. *See Roubos v. Miller*, 214 Ariz. 416, ¶ 21, 153 P.3d 1045, 1049 (2007) (party requesting fees must state statutory or contractual basis for award). However, as the prevailing party, it is entitled to costs upon compliance with Rule 21, Ariz. R. Civ. App. P.

_____
GARYE L. VÁSQUEZ, Judge

CONCURRING:


_____
JOSEPH W. HOWARD, Judge


_____
J. WILLIAM BRAMMER, JR., Judge