DANIEL WANN *et al.*

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS, for the use of
JOHN BIRK.

1. GUARDIAN'S BOND—*liability of the sureties thereon.* The sureties upon the general bond of a guardian are liable for the rents of the lands of the ward leased by the guardian, notwithstanding the requirement of section 135 of the chapter of the Statute of Wills, that the guardian, before leasing such lands, shall execute a special bond, conditioned faithfully to apply the moneys to be raised therefrom to the benefit of the ward. The giving of the new bond required by that section of the statute can not be construed as a release from ultimate liability of the sureties on the general bond.

2. So where a guardian leased the lands of his ward, under an order of court authorizing the leasing, and also requiring him to execute a bond conditioned for the faithful application of the moneys thus to be raised, to the benefit of his ward, the order being made in pursuance of section 135 of the Chapter of Wills, but the guardian failed to give the bond, it was *held*, the sureties on the guardian's general bond were liable to the ward, the guardian failing to account, and being insolvent, for the proceeds of the leased premises.

3. SAME—*action on—when may be brought.* Upon objection that a suit could not be maintained upon the bond, until there had been a settlement in the court of probate, an order by the court fixing the sum due and directing its payment, and a refusal by the guardian to pay, it was *held*, the guardian could not prevent an action on the bond by refusing or failing to

render an account; that whenever he committed a breach of any of the conditions of the bond, he was liable to an action, and that, the declaration averring the removal of the guardian, the appointment of a successor, the making of an order by the probate court directing the guardian to pay and render to his said successor all moneys in his hands, with a breach that he did not so render and pay as directed by said court, on which breach issue was joined that he did render and pay to his successor, &c., it was immaterial under the issue whether he had had a final accounting with the court or not.

WRIT OF ERROR to the Circuit Court of Jo Daviess county; the Hon. BENJAMIN R. SHELDON, Judge, presiding.

The opinion states the case.

Messrs. D. & T. J. SHEEAN, for the plaintiffs in error.

Mr. WILLIAM CAREY, for the defendant in error.

Mr. CHIEF JUSTICE LAWRENCE delivered the opinion of the Court:

This is a suit upon a guardian's bond, brought in the name of the people, for the use of one of two wards, the other having arrived at his majority and received his share of the estate. The circuit court rendered judgment against the defendants for $8000, and they have prosecuted a writ of error.

The wards were the owners of certain lands in the county of Jo Daviess, which the guardian leased, under an order of court, and received as rent considerable sums of money. The order authorizing the leasing also required the guardian to execute a bond in the penal sum of $1000, conditioned faithfully to apply the moneys to be raised to the benefit of the wards, the order being made in pursuance of section 135 of the Chapter of Wills. The guardian failed to give the bond, and the main question in this case, and indeed, the only one affecting the ultimate liability of the defendants is, whether the

sureties upon the general bond of a guardian are to be considered as not liable for the proceeds of leased land, in consequence of the special bond and security required by the statute to be given in such cases.

It is contended by counsel for appellants, that the legislature, by requiring the special bond, showed that the liability was not intended to be covered by the general bond, since, if it was so covered, no reason can be given why a special bond should have been required. This view is not without plausibility, but we do not consider the argument sufficiently strong to overcome the plain conditions of the general bond, taken in connection with the history of our legislation on this subject.

Section 135 of the Chapter of Wills was first enacted January 23d, 1829, being then section 130. But before that date, namely, on the 5th of February, 1827, the Statute of Guardian and Ward was enacted, under the title of " Minors, Orphans and Guardians," and by section 9 of that statute, guardians were authorized to lease the lands of their wards under the direction of the court of probate, and no new bond was required to be executed. The guardian in socage at common law, could lease the land of the ward and collect the rents, and the general guardian in this country would undoubtedly have the same right, independently of statutory provisions. Where, however, a statute requires an order of court authorizing such leasing, the order must be obtained in order to render the lease valid, but the power itself is none the less one of the recognized incidents of the office of guardian, the legislature having simply controlled the mode of its exercise. It is indeed one of the duties of such office, when the interests of the wards require their lands should be leased. The act of 1827 first regulated this power by requiring the authority of the court to be obtained. Then came the act of 1829, requiring, as an additional condition, that the guardian should give a special bond. This provision is in a different statute, and makes no reference to the existing law, and both provisions were re-enacted in 1845, the one in the Chapter of Guardian and Ward,

authorizing the leasing on the order of court, without requiring
a bond, and the other in the Chapter of Wills, requiring a bond.

But the Statute of Guardian and Ward has, from the begin-
ning, prescribed, as one of the conditions of a guardian's bond,
that he "shall faithfully discharge the office and trust of such
guardian, according to law," and as another condition, that he
shall "render and pay to such minor all moneys, goods and
chattels, title papers and effects, which may come to the hands
or possession of such guardian, belonging to such minor, when
such minor shall be thereto entitled, or to any subsequent
guardian, should said court direct." That moneys received
from leased lands by the guardian, come to him by virtue of his
office, and that such moneys, derived from the minor's lands,
belong to the minor, are propositions which will hardly be
denied, and it is equally undeniable that a guardian, who
refuses or fails to account for such moneys, has not "faithfully
discharged his office and trust," and has not paid to the minor
or to his own successor, all moneys which have come to the
hands of such guardian belonging to such minor. Language
has no meaning unless, in such a case, the conditions of the
bond have been broken. Prior to the enactment of the 135th
section of the Statute of Wills, it would not have occurred to
any one to deny, under such circumstances, the liability of the
guardian and his sureties, upon his general bond. The case
would have been within the precise letter and spirit of the
statute, leaving no room for construction. The only change
in the law since that enactment is the provision requiring a
special bond, and the liability of the securities upon the gen-
eral bond, remains as it was before, unless the mere requirement
of a new bond and security is considered as clearly implying
that the legislature intended the securities upon the general
bond should no longer be held subject to a liability which
would have attached to them, under existing statutes or at
common law.

We should remember that repeals by implication are not
favored. If the legislature had designed the result now claimed

as flowing from the new enactment, it would have been very easy to say that the securities upon the general bond should not be liable for the rents.   We must further remember, that the interests of fatherless infants are the object of a very just and tender solicitude on the part both of courts and legislatures.   These helpless members of society are deprived of their natural protectors, and unless their property is hedged round by stringent legislation, and guarded vigilantly by the courts, it will too often become the easy prey of unprincipled avarice.   With what reason, then, or upon what ground, can we hold, because the legislature has required another bond, they intended the ward should have no remedy upon the bond already given.   Are we to indulge in a refinement of reasoning, and make the legislature say what it has not said, to the injury of a class the most helpless in the community, and, therefore, most entitled to the favorable consideration both of those who make and those who administer the law?   Should we not rather say, and would it not undoubtedly be much nearer the actual fact, that the legislature intended to do simply what they have done, to wit, give to the infant the benefit of a new bond and increased security?   Why the legislature deemed this necessary, we do not know, but we are certain they did not intend to impair the security already given to the ward by the guardian's general bond.

Counsel for plaintiff in error, cite *Lyman* v. *Conkey,* 1 Met. 317; *Mattoon* v. *Corning,* 13 Gray, 387; *Williams* v. *Morton,* 38 Maine, 47; and *Warnick* v. *The State,* 5 Ind. 350.

We can not regard these decisions as very much in point. Our statute requires the bond of the guardian to be for a sum double the amount both of the real and personal estate, thus showing the intention of the legislature to require security for all acts to be done by him in reference to either class of property, and recognizing the fact that he would have to deal with both classes.   We have not at hand the statutes of Massachusetts, in force when these decisions were made, but it is apparent, from the opinions of the court, they are very different from

ours.    Under our statute, no person except the guardian can
procure an order either to sell or lease the real estate of the
minor.    Under the statute of Massachusetts, it appears, from
the opinion in the case cited in 1 Met. *supra,* that where the
estate consists of a single messuage, so situated that a sale of
part would injure the whole, or where it would be greatly for the
benefit of the ward that the real estate should be changed into
personal, an order of sale may be obtained, independently of the
guardian, whether the sale is necessary for the payment of the
debts or for the maintenance of the ward; and in both these
cases the court says:    "The authority is regarded as a special
trust, superadded to that of guardian, and which, indeed, may
be conferred on a person other than the guardian."    The court
says further, whenever the object is to raise a fund to stand in
lieu of the real estate, for the future use of the ward, it is
deemed a special, separate trust, and is not one of the general
duties of guardianship, as it certainly would not be where the
authority to sell can be given to a person not the guardian.

The case before the court was a sale of that character, and
the court held the securities on the general bond not liable.
The other cases cited from the Massachusetts and Maine
reports, are all decided on the authority of this, and, like this,
are all cases arising under a sale, and not a lease.    Whether
any distinction can be taken between a sale and a lease under
our statute, we will not here inquire, but the decision of the
Massachusetts court is clearly based upon the fact that the sale
in question was peculiar in its character, and not belonging to
the general duties of a guardian.

The case cited from 5th Ind., was where the guardian had
sold the land of his ward, and the court held the original bond
of the guardian was only designed, under the statutes of that
State, to cover the personal and the rents of the real estate.

There is another view to be taken of this matter, which
we deem worthy of a passing mention.    Suppose no lease of
the lands had been executed, but the ore had been dug by
trespassers, and the guardian had recovered damages from them,

as it would have been his duty to do. These damages would have belonged to the wards, and if not accounted for by the guardian, we presume no person would doubt the liability of the sureties on his bond. In the present case, the guardian has not received money from trespassers, but from persons entering under an invalid lease, the guardian not having given the requisite bond. But the ore has been dug, and the proceeds have gone into his hands as in the supposed case of trespassers. The guardian does not account, and is insolvent. The wards have no special bond on which to bring a suit. Their money has been wrongfully appropriated, and yet they are to be told they have no remedy against the sureties, because the ore was dug under an invalid lease, though if dug without any lease at all, their remedy would have been complete. We must doubt the soundness of any reasoning which arrives at such results, or the wisdom of any decision which would thus refine away, by subtle distinctions, the security which the law designs to give infants against the malfeasance of their guardians. Counsel say this was an unlawful act on the part of the guardian, but it was done by virtue of his office, in reference to the property of his wards, and it is against just such unlawful acts that the law intends the infant shall be secured.

It is urged that no suit can be maintained upon the bond until there has been a settlement in the court of probate, an order by the court fixing the sum due and directing its payment, and a refusal by the guardian to pay. But the guardian can not prevent an action on the bond by refusing or failing to render an account. There are various conditions in the bond, and whenever he has committed a breach of any one of them, he is liable to an action. The declaration in this case avers the removal of the guardian, the appointment of a successor, the making of an order by the probate court directing the guardian to pay and render to his said successor all moneys in his hands, with a breach that he did not so render and pay, as directed by said court. To this breach the defendant pleaded that he did render and pay to his successor, &c.

This was the only issue on this breach, and under this issue it was immaterial whether he had had a final accounting with the court or not. That he did pay to his successor, as averred in the plea, is not claimed on the argument. On the contrary, it was admitted on the trial he was insolvent, and the proof showed, without contradiction, that he was indebted to his ward for money received in a sum greater than the penalty of the bond.

The judgment is affirmed.

*Judgment affirmed.*

Mr. JUSTICE SHELDON did not sit in this case, it having been tried before him while he was circuit judge.